## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BUDDY BULLOCK,
    Petitioner,

vs.

WANZA JACKSON, WARDEN,
    Respondent

Civil Action No. 1:07-cv-392

Dlott, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2254. The case is now before the Court upon the petition (Doc. 1) and respondent's

return of writ and exhibits thereto. (Doc. 3).[1]

## I.    PROCEDURAL HISTORY

This case involves the following facts, as summarized by the Twelfth District Ohio Court of

Appeals:[2]

> {¶ 2} On the morning of February 22, 2003, Deputy Daniel Cooper of the Clermont
> County Sheriff's Office and Chief Hesler of the Felicity Police Department visited a
> residence owned by the grandmother of Billy Sargent. The officers sought to serve
> arrest warrants on two individuals unrelated to this case thought to be there. Sargent
> and appellant were the sole occupants of the house at the time and shared the rent
> expense. After the officers knocked on the front door, Sargent answered and
> consented to a search of the premises. While searching the exterior, the officers
> discovered a large burn pile containing the remains of lighter fluid and lantern fuel
> containers as well as stripped batteries. They also noticed an altered anhydrous tank

---

[1] Although petitioner was granted leave to file an amended petition to add a claim of ineffective assistance of appellate counsel, he did not file an amended petition in accordance with the Court's Order of June 2, 2008. (Doc. 13). Therefore, any claim of ineffective assistance of appellate counsel is not before the Court.

[2] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

which smelled strongly of ammonia. In light of these indicators of a clandestine drug laboratory, Deputy Cooper placed a call to his supervisor requesting the assistance of the narcotics task force.

{¶ 3} The officers also searched a shed located near the house. Their findings included mason jars containing white powdery residue, a hot plate, a respirator, coffee filters, a blender containing white powder, charred tinfoil, and a fire extinguisher. The narcotics agents later re-examined the area and observed that the fuel cans in the burn pile had been punctured and the lithium strips removed from the battery casings in the pile. According to the testimony of Agent Marc Anthony Sorbello, one of the investigating narcotics officers, all of this evidence is consistent with methamphetamine production.

{¶ 4} The officers next searched the interior of the residence. In the kitchen they encountered appellant. During a brief discussion with the police, appellant voiced his objections to a search of his room. After searching appellant, police allowed him to return to his room to change his shirt and leave the premises along with a female companion who had spent the night with him

{¶ 5} A search of the house yielded further evidence of potential drug activity. In appellant's bedroom, officers recovered a broken and burned light bulb, which Agent Sorbello testified is typically used to ingest methamphetamine. A baggie containing methamphetamine was discovered in the front pocket of a shirt resembling the one officers had seen appellant wearing prior to changing clothes. The officers also found appellant's personal effects and mail addressed to him in this room. In an unoccupied bedroom, 60 boxes of pseudoephedrine and 12 lithium batteries, components in methamphetamine production, were discovered in a backpack. Sargent testified that he had seen this backpack in appellant's possession. Pursuant to Agent Sorbello's calculations, this quantity of pseudoephedrine and lithium batteries could yield approximately 48 grams of methamphetamine, a large amount suggesting that the drug was being manufactured for sale.

{¶ 6} On April 23, 2003 appellant was indicted for illegal manufacture of drugs in violation of R.C. 2925.04(A), a second-degree felony, and aggravated possession of drugs in violation of R.C. 2925.11(A), a third-degree felony. Appellant pled not guilty and waived his right to a jury trial. After a number of continuances, the matter proceeded to a bench trial on May 17, 2004.

{¶ 7} At trial, Sargent testified that appellant had been living at the residence for about one to two months. Although Sargent rarely entered appellant's bedroom, he acknowledged that appellant kept clothing and other personal items in the room. Sargent explained that he allowed appellant to run the drug lab in exchange for methamphetamine, and admitted to aiding in the production process on a couple of

2

occasions. The state also called Jamison King, who testified that appellant acquired a particular tank fitting from him and an anhydrous tank from a mutual friend.

{¶ 8} On May 19, 2004, after considering all of the evidence, the court found appellant guilty on both counts. Appellant subsequently filed a motion for new trial, which the court denied after a hearing.

(Doc. 3, Exh. 15 at 1-4; see also Doc. 3, Exhs. 1-4). Petitioner was sentenced to an aggregate term of seven years incarceration. (Doc. 3, Exh. 5).

Petitioner filed a pro se motion for leave to file a delayed appeal, which the state appellate court denied as premature since petitioner had a timely motion for a new trial pending. (Doc. 3, Exhs. 6-8).

Petitioner, through trial counsel, filed a motion to set aside verdict and for a new trial based on witness misconduct and newly discovered evidence, to wit, affidavits from three prisoners at the county jail suggesting that Jamison King, a witness for the prosecution, lied at trial. (Doc. 3, Exh. 9). The trial court determined that the motion based on witness misconduct was not timely. (Doc. 3, Exh. 10). The trial court further determined that a new trial was not warranted based on the newly discovered evidence. The trial court reasoned that such evidence served to impeach the credibility of an unimportant witness and there was not a strong probability that the evidence would change the result if a new trial were granted. Given the testimony of Billy Sargent, the circumstantial evidence of petitioner's guilt, and petitioner's lack of credibility, the trial court stated it would be "inconceivable" that the results of a new trial would be any different. (Doc. 3, Exh. 10).

On April 22, 2005, petitioner filed a pro se notice of appeal to the Twelfth District Court of Appeals, Clermont County, Ohio. (Doc. 3, Exh. 11). Petitioner was appointed new counsel who raised the following assignments of error:

3

1. THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT
FAILED TO GIVE APPELLANT A CONTINUANCE TO SECURE NEW
COUNSEL.

2. THE VERDICT SHOULD BE REVERSED BECAUSE APPELLANT
RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

3. THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT
ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL.

4. THE VERDICT SHOULD BE REVERSED BECAUSE IT IS AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE.

(Doc. 3, Exh. 12). The State filed a response (Doc. 3, Exh. 13) and petitioner replied. (Doc. 3, Exh.

14). On February 13, 2006, the Ohio Court of Appeals overruled all of the assignments of error and

affirmed the trial court's judgment. (Doc. 3, Exh. 15).

Petitioner filed a pro se notice of appeal to the Supreme Court of Ohio. (Doc. 3, Exh. 16).

Petitioner raised the following propositions of law:

1. The verdict should be reversed because the trial court failed to give appellant a
continuance to secure new counsel.

2. The verdict should be reversed because appellant received ineffective assistance of
counsel.

3. The verdict should be reversed because the trial court erred in denying appellant's
motion for a new trial.

4. The verdict should be reversed because it is against the manifest weight of the
evidence.

(Doc. 3, Exh. 17). The State waived a response. (Doc. 3, Exh. 18). On May 26, 2006, the Supreme

Court of Ohio declined jurisdiction to hear the case and dismissed the appeal as not involving any

substantial constitutional question. (Doc. 3, Exh. 19).

Petitioner's subsequent motion for judicial release and petition for writ of mandamus were

denied. (Doc. 3, Exhs. 20-26).

4

On May 18, 2007, petitioner commenced the instant federal habeas corpus action. (Doc. 1).

Petitioner asserts four grounds for relief:

**GROUND ONE:** THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT FAILED TO GIVE APPELLANT A CONTINUANCE TO SECURE NEW COUNSEL.

**Supporting FACTS:** Because she made me sign a piece of paper that said if I didn't take a plea bargain that she wasn't responsible for the time that I would get. Therefore I knew that she wasn't going to fight the case for me.

**GROUND TWO:** THE VERDICT SHOULD BE REVERSED BECAUSE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

**Supporting FACTS:** (1) Because she never filed a motion to suppress (2) she never brought up my co-defendant's felony conviction for cultivating marijuana on 8-23-2000 at the very same address.

**GROUND THREE:** THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL.

**Supporting FACTS:** My attorney Helene Koligian didn't file a motion for a new trial in a timely manner.

**GROUND FOUR:** THE VERDICT SHOULD BE REVERSED BECAUSE IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**Supporting FACTS:** Both State witness's lied on the stand. In court Billy Sargent was asked if he had any felony conviction in the past ten years – His answer was NO – On 8-24-2000 case no. 2000 CR B04198 he was found guilty for cultivating marijuana at the very same residence.

(Doc. 1).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of a state court are entitled to a presumption

of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C.

5

§ 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> The phrases "contrary to" and "unreasonable application" have independent meanings: A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to address the constitutional issues, the federal court must look at the state court's decision and conduct an independent inquiry into whether the state court reached a decision contrary to clearly established federal law or based its decision on an unreasonable determination of the facts in light

6

of the evidence presented. *Schoenberger v. Russell,* 290 F.3d 831, 835 (6th Cir. 2002); *Harris v.*

*Stovall,* 212 F.3d 940, 943 & n. 1 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001).  The review is

not a full *de novo* review of the claims, but is deferential to the state court's determination. *Id.*

## III.  GROUND ONE OF THE PETITION IS WITHOUT MERIT.

Ground One of the petition asserts that petitioner's rights were violated when the trial court

refused to grant petitioner a continuance on the first day of trial to secure new counsel.  In

addressing this claim of error, the Twelfth District Court of Appeals found:

> {¶ 11} Appellant contends that the trial court's denial of his motion for a
> continuance on the first day of trial was unreasonable.  Specifically, appellant faults
> the court's failure to detail its rationale behind the denial.  Appellant insists that he
> submitted his request for new counsel at the earliest opportunity following his plea
> hearing,[FN1] and that his emergent mistrust of appointed counsel following his vacated
> guilty plea was a valid basis for the request.
>
> > [Footnote 1: Appellant's plea hearing took place on Friday, May 14,
> > 2004.  Appellant requested a continuance to secure new counsel on
> > the first day of his trial, Monday, May 17, 2004.]
>
> {¶ 12} A trial court has broad discretion in determining whether to grant or deny a
> continuance. *State v. Unger* (1981), 67 Ohio St.2d 65, 67.  When evaluating a
> motion for a continuance, the court may consider the length of the delay requested,
> prior continuances, inconvenience, the reason for the delay, whether the defendant
> contributed to the delay, and any other relevant factors. Id. at 67-68.  An appellate
> court may not reverse the denial of a continuance absent an abuse of discretion. Id. at
> 67.  An abuse of discretion implies that the court's decision was unreasonable,
> arbitrary, or unconscionable, and not merely an error of law or judgment. *State v.*
> *Adkins* (2001), 144 Ohio App.3d 633, 644.
>
> {¶ 13} Appellant was found indigent and appointed counsel for this case.  "An
> indigent defendant has no right to have a particular attorney represent him and
> therefore must demonstrate 'good cause' to warrant substitution of counsel." *State v.*
> *Cowans,* 87 Ohio St.3d 68, 72, 1999-Ohio-250, citing *United States v. Iles* (C.A.6,
> 1990), 906 F.2d 1122, 1130.  Examples of "good cause" include a conflict of
> interest, a complete breakdown in communication, or an irreconcilable conflict
> which leads to an apparently unjust result. *State v. Blankenship* (1995), 102 Ohio

App.3d 534, 558. An appellate court reviews the trial court's denial of a request for substitute counsel for an abuse of discretion. *Cowans* at 72-73.

{¶ 14} We find that the trial court did not err when it denied appellant's request for a continuance to obtain new counsel because appellant failed to show "good cause." Appellant neglected to provide a reason for his request other than his desire to obtain a particular attorney, which is not sufficient. Id. at 72. The trial date had been set for seven months prior to appellant's plea hearing, and appellant had ample time in the interim to request new counsel. Regarding appellant's alleged mistrust of his appointed counsel in the face of his aborted guilty plea, appellant neglected to express this distrust at the plea hearing and instead waited until the morning of trial. Further, this case had been previously continued six times. Under these circumstances, the trial court did not abuse its discretion in denying appellant's request for a continuance to obtain new counsel. Appellant's first assignment of error is overruled.

(Doc. 3, Exh. 15 at 4-5).

The state court of appeals addressed petitioner's choice of counsel claim purely as a matter of state law. This Court is without jurisdiction to review issues of state law on federal habeas corpus review. This Court may grant a writ of habeas corpus only if petitioner, pursuant to the judgment of a State court, "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal courts may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 (1988). *See also Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir.) (concluding that violation of a state law is not cognizable in federal habeas corpus proceedings), *cert. denied*, 525 U.S. 1025 (1998). "It is not the province of a federal court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. *See Floyd*, 148 F.3d at 619; *Serra v.*

8

*Michigan Dep't of Corrections,* 4 F.3d 1348, 1354 (6th Cir. 1993), *cert. denied,* 510 U.S. 1201 (1994). Since petitioner's first ground for relief is premised entirely on alleged violations of Ohio law, his claim is not cognizable in this federal habeas corpus proceeding.

Even assuming, however, that petitioner argued he was denied counsel of his choice in violation of the Sixth Amendment, his claim is without merit. "The Sixth Amendment's right to counsel encompasses two distinct rights: a right to adequate representation and a right to choose one's own counsel." *Daniels v. Lafler,* 501 F.3d 735, 738 (6th Cir. 2007). A criminal defendant who hires and pays for an attorney has the right to be represented by counsel of his or her own choosing. *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (citing *Wheat v. United States,* 486 U.S. 153, 159 (1988); *Powell v. Alabama,* 287 U.S. 45, 53 (1932)). Indigent defendants, however, do not have a Sixth Amendment right to be represented by their counsel of choice. *Wilson v. Parker,* 515 F.3d 682, 696 (6th Cir. 2008) (citing *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624 (1989); *Morris v. Slappy,* 461 U.S. 1, 14 (1983)). As the Supreme Court noted in *Caplin,* "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." 491 U.S. at 624. Thus, petitioner, who is indigent, had the right to appointment of counsel and effective representation by such counsel, but he had no constitutional right to any particular choice of counsel. *Daniels,* 501 F.3d at 739 (an indigent defendant forced to rely on court-appointed counsel has no choice-of-counsel right). Therefore, Ground One of the petition is without merit and should be denied.[3]

---

[3]*United States v. Iles,* 906 F.2d 1122 (6th Cir. 1990), cited by the Ohio Court of Appeals, does not alter this result. In *James v. Brigano,* 470 F.3d 636 (6th Cir. 2006), the Sixth Circuit reversed a district court's grant of habeas relief based on the state trial court's failure to inquire into the reasons for the defendant's dissatisfaction with appointed counsel prior to removing counsel. The district court relied on *Iles,* which held that in a federal

9

## IV. GROUND TWO, PART TWO, AND GROUND THREE OF THE PETITION ARE PROCEDURALLY DEFAULTED AND WAIVED.

Ground Two, part two, of the petition asserts that petitioner was denied effective assistance of trial counsel when counsel failed to impeach petitioner's co-defendant, Billy Sargent,[4] with a previous felony conviction for cultivating marijuana at the same address in August 2000. Respondent contends this claim is procedurally defaulted and waived for purposes of habeas corpus review because petitioner failed to fairly present this particular claim of ineffective assistance of counsel to the Ohio courts. The Court agrees.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757

_____

prosecution the trial court has a duty to determine the reasons for an indigent defendant's dissatisfaction with current counsel when that indigent defendant requests that appointed counsel be discharged and new counsel appointed. The Sixth Circuit in *James* disagreed, holding that the petitioner's Sixth Amendment choice-of-counsel "claim concerns an unreasonable application of law, not an unreasonable determination of facts in the state court. Thus, under the AEDPA standard of review, because *Iles* is not 'clearly established Federal law, as determined by the Supreme Court of the United States,' the district court's grant of relief on that claim is reversed. 28 U.S.C. § 2254(d)(1)." *James*, 470 F.3d at 643.

[4]Billy Sargent was not actually petitioner's co-defendant, but rather his roommate at the time of the search of their rented residence. Petitioner was indicted and tried separately. (Doc. 3, Exh. 1).

10

F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state court of the claim's federal nature. *McMeans,* 228 F.3d at 681. Under these guidelines, a petitioner may fairly present to the state courts the constitutional nature of his claim by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.; Franklin,* 811 F.2d at 326. The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin,* 811 F.2d at 326. "While a petitioner need not cite chapter and verse of constitutional law, general allegations of the denial of rights to a fair trial and due

11

process do not fairly present claims that specific constitutional rights were violated." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal citations and quotations omitted). Generally, a claim is not fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

In the instant action, petitioner failed to fairly present to the state courts his ineffective assistance of counsel claim based on counsel's alleged failure to impeach Billy Sargent with a previous conviction. Petitioner, through his appellate counsel, failed to raise this particular claim on direct appeal to the Ohio Court of Appeals. Although petitioner raised an ineffective assistance of counsel claim on direct appeal, he did not present the factual underpinnings of his claim concerning Billy Sargent's previous conviction to the Ohio Court of Appeals. Petitioner is thus barred from raising this claim in the Ohio courts because he had the previous opportunity to present such claim during his direct appeal and failed to do so, thereby waiving such issue under state procedural law.[5] *See Lordi v. Ishee*, 384 F.3d at 194, citing *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell*, 274 F.3d at 349. This is an adequate and independent state ground which forecloses this Court's review of the federal constitutional claims therein in the absence of a showing of cause and prejudice. *Id.* Likewise, the ineffective assistance of counsel claim raised in Ground Three of the petition is similarly waived. Petitioner asserts his trial counsel failed to timely

---

[5]"Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 106 (1967)(syllabus).

12

file his motion for a new trial thereby resulting in the denial of his motion.[6] However, this claim
was not raised in conjunction with petitioner's ineffective assistance of counsel claim raised on
direct appeal and is procedurally defaulted under the doctrine of res judicata. (Doc. 3, Exh. 12). By
failing to fairly raise the factual basis for this claim in the Ohio courts, petitioner has waived this
claim for habeas review.

Petitioner has failed to demonstrate either cause for the procedural default of his ineffective
assistance of counsel claims or actual prejudice resulting from the alleged constitutional violations.
Moreover, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his
procedurally-defaulted claims for relief are not addressed on the merits by this Court. Therefore,
petitioner has waived any ineffective assistance of counsel claim associated with Ground Two, part
two of the petition or Ground Three of the petition for purposes of federal habeas corpus review.


## V. GROUND TWO, PART ONE OF THE PETITION IS WITHOUT MERIT.

Ground Two, part one of the petition asserts a claim of ineffective assistance of trial
counsel based on counsel's failure to file a motion to suppress. The Ohio Court of Appeals, the last
state court to issue a reasoned opinion on this issue, ruled as follows:

{¶ 17} Appellant insists that his counsel's performance was deficient because
counsel failed to file a motion to suppress the evidence recovered from appellant's
bedroom, which could have removed key evidence from the consideration of the trier
of fact. At trial, counsel for appellant objected to the admission of "anything coming
in that was found in Mr. Bullock's room." The court found that defense counsel's

---

[6] Although the trial court did find the motion untimely, it nevertheless addressed the merits of the motion for
a new trial and denied the motion. (Doc. 3, Exh. 10). Thus, petitioner's ineffective assistance of counsel claim
would fail in any event because petitioner could not show he was prejudiced by counsel's untimely filing. *See*
*Strickland v. Washington,* 466 U.S. 668, 687 (1984).

failure to file a motion to suppress the evidence, the proper avenue for this objection, resulted in a waiver of the issue.

{¶ 18} To determine that counsel's performance constitutes ineffective assistance, we must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. *Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 693, 104 S.Ct. 2052. Prejudice exists where appellant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 143-44, citing *Strickland* at 689.

{¶ 19} Upon reviewing the record, we find that defense counsel was not ineffective for failing to move to suppress the evidence found in appellant's room. "[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel." *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000-Ohio-448, citing *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, 106 S.Ct. 2574. Such an omission signifies ineffective assistance only when the record establishes that the motion would have been successful if made. Cf. *State v. Robinson* (1996), 108 Ohio App.3d 428, 433. In order to succeed on a motion to suppress evidence, the movant must have had a reasonable expectation of privacy in the area searched. *State v. Proctor* (May 14, 2001), Warren App. Nos. CA2000-06-059, CA2000-08-068, CA2000-08-078, at 8. Appellant's testimony reveals that he did not have a reasonable expectation of privacy in the bedroom:

{¶ 20} "Q. You * * * agreed that you'd been living [at Sargent's house] roughly a month; remember to testifying to that?

{¶ 21} "A. Yes, sir, I do.

{¶ 22} "Q. And you agreed, I believe, as well that you occupied that middle bedroom-

{¶ 23} "A. Yes sir.

{¶ 24} "Q.-at some point. Okay.

14

{¶ 25} "A. But I also said I wasn't the only one that occupied that middle bedroom.

{¶ 26} "Q. Okay. But your testimony is that you did occupy the middle bedroom?

{¶ 27} "A. I wasn't the only one. I did, but I wasn't the only one, yes."

Appellant later reiterated:

{¶ 28} "Q. So, if I understand your testimony, Mr. Bullock, Jesse Walz, Joey Ott, and Heather Ott, and others were staying inside this middle bedroom; right? You have a flop house if a bunch of them are staying inside that middle bedroom?

{¶ 29} "A. It's not just the middle bedroom. All the bedrooms, you know, it-

{¶ 30} "Q. In particular, let's talk about the middle bedroom. Did you not testify that [Jesse Walz], Joey Ott, and Heather Ott and others were staying in there as well as you?

{¶ 31} "A. Yes."

{¶ 32} In the absence of a privacy interest, appellant's motion to suppress would not have been properly sustained. Appellant thus failed to demonstrate that he was prejudiced by the claimed deficiency of trial counsel. Appellant's second assignment of error is overruled.

(Doc. 3, Exh. 15 at 5-8).

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must

show: (1) his counsel made such serious errors that he was not functioning as the counsel

guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the

defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687

(1984). The Court may dispose of an ineffective assistance of counsel claim by finding that

15

petitioner made an insufficient showing on either ground. *Id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694.

Petitioner has failed to show he was prejudiced by counsel's failure to file a motion to suppress. There is no "reasonable probability" that such a motion would have been successful since, as discussed by the Ohio Court of Appeals and shown by petitioner's testimony, petitioner had no reasonable expectation of privacy in the bedroom from which the incriminating items were moved.

To establish his Fourth Amendment claim, petitioner must first show he had "reasonable" or "legitimate expectation of privacy" in the area searched. *Katz v. United States,* 389 U.S. 347, 353 (1967); *Rakas v. Illinois,* 439 U.S. 128, 143 (1978); *United States v. Chadwick,* 433 U.S. 1, 7 (1977). In determining whether petitioner had a reasonable expectation of privacy for purposes of the Fourth Amendment, the Court examines (1) whether petitioner manifested a subjective expectation of privacy in the area searched; and (2) whether "society is prepared to accept that expectation as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 40 (1988); *California v. Ciraolo,* 476 U.S. 207, 211 (1986); *Rakas v. Illinois,* 439 U.S. 128, 140 (1978). Whether petitioner possesses a subjective expectation of privacy depends upon whether "he seeks to preserve something as private."*Katz,* 389 U.S. at 351. The Court considers factors such as petitioner's proprietary or possessory interest in the place to be searched or item to be seized;

16

whether petitioner has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; and whether he was legitimately on the premises. *U.S. v. Dillard*, 438 F.3d 675, 682 (6th Cir. 2006); *U.S. v. King*, 227 F.3d 732, 744 (6th Cir. 2000).

Petitioner failed to establish that he had a reasonable expectation of privacy in the bedroom searched or the items found therein. Petitioner testified that he stayed at Billy Sargent's house "off and on" for one month before the police searched the residence. (Doc. 4, Tr. 165). Petitioner testified he was only one of numerous people who lived at the house and stayed in that particular bedroom. (Doc. 4, Tr. 165, 168, 170-71, 177, 187). Petitioner identified five different individuals by name who stayed in that bedroom and testified, "There's been quite a few people in and out of that house and stayed in and out of that room." (Doc. 4, Tr. 170-171). He testified that Joey and Heather Ott spent the night before the raid in the bedroom and that the plaid jacket found hanging in the closet belonged to Joey Ott. (Doc. 4, Tr. 168-169, 184). Petitioner denied that the glass bulb and baggie found in the dresser drawer were his and suggested they belonged to Joey Ott. (Doc. 4, Tr. 170, 186). Petitioner also denied that he shared expenses with Billy Sargent and testified he "never gave him nothing." (Doc. 4, Tr. 216).

Petitioner's testimony shows he had no proprietary or possessory interest in the place to be searched. Although he characterized the room that was searched as "his bedroom" he also testified that numerous other individuals stayed in that room and kept their possessions in the room. His testimony does not establish that he had the right to exclude others from the bedroom or that he took any precautions to maintain any privacy within that room. Since the police lawfully entered the premises and since the only conduct challenged is the search of a bedroom as to which petitioner had no expectation of privacy, petitioner fails to establish his Fourth Amendment rights were

17

violated. Accordingly, trial counsel's failure to file a motion to suppress did not prejudice petitioner

since there was no "reasonable probability" the result of the criminal proceeding would have been

different had counsel filed the motion. *Strickland,* 466 U.S. at 694.  The Ohio Court of Appeals

correctly identified and reasonably applied the proper standard of review clearly established by the

Supreme Court in *Strickland* in evaluating petitioner's ineffective assistance of trial counsel claim.

Ground Two, part two of the petition should therefore be denied.

## VI.  GROUND THREE OF THE PETITION IS WITHOUT MERIT.

Ground Three of the petition alleges the trial court erred by denying petitioner's motion for a

new trial.  In rejecting this assignment of error, the Ohio Court of Appeals stated:

{¶ 35} Appellant argues that the trial court wrongly denied his motion for new trial.
Appellant filed the motion pursuant to Crim.R. 33(A)(2), alleging misconduct on the
part of a state witness, Jamison King.  To establish misconduct, appellant submitted
three affidavits from inmates incarcerated with King stating that King admitted to
lying at appellant's trial.  The trial court considered appellant's motion under Crim.
R. 33(A)(6) rather than Crim. R. 33(A)(2), construing the affidavits as newly
discovered evidence.  After performing the requisite analysis,[FN2] the trial court denied
the motion.

> [Footnote 2: In *State v. Petro* (1947), 148 Ohio St. 505, syllabus, the
> Ohio Supreme Court ruled that, in order to prevail on a Crim.R.
> 33(A)(6) motion for new trial on the ground of newly discovered
> evidence, the movant must establish that the new evidence: (1)
> discloses a strong probability that it will change the result if a new
> trial is granted, (2) has been discovered since the trial, (3) is such as
> could not in the exercise of due diligence have been discovered before
> the trial, (4) is material to the issues, (5) is not merely cumulative to
> former evidence, and (6) does not merely impeach or contradict the
> former evidence.]

{¶ 36} The decision to grant or deny a motion for new trial is within the sound
discretion of the trial court and will not be disturbed on appeal absent an abuse of
discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, paragraph one of the syllabus.
As stated, an abuse of discretion implies that the court's decision was unreasonable,
arbitrary, or unconscionable. *Adkins,* 144 Ohio App.3d at 644.

{¶ 37} We initially note that appellant's motion for new trial was untimely.  Such a

motion, when filed under Crim.R. 33(A)(2), must be submitted within 14 days of the court's decision. Crim.R. 33(B). The record indicates that appellant did not file his motion until June 22, 2004, which was 34 days after his conviction. As stated, however, the trial court chose to analyze appellant's motion for new trial on the basis of newly discovered evidence. See Crim.R. 33(A)(6). Because the movant has 120 days to submit a motion for new trial on these grounds, appellant's motion would have been timely if submitted under Crim.R. 33(A)(6). See Crim.R. 33(B).

{¶ 38} In denying appellant's motion, the trial court reasoned that the affidavits alleging that King admitted to perjuring himself at appellant's trial did not disclose a strong probability that such evidence would change the result if a new trial were granted. King's testimony was not essential to appellant's conviction. The trial court was presented with sufficient evidence to establish appellant's guilt, including Sargent's testimony, circumstantial evidence, and appellant's own implausible testimony. Further, the trial court noted that the affidavits merely attempted to impeach King's testimony, which is not an adequate basis for a new trial. *State v. Petro* (1947), 148 Ohio St. 505, syllabus. We agree with the trial court's sound analysis, and find that its denial of appellant's motion was not so unreasonable, arbitrary, or unconscionable as to constitute an abuse of discretion. Appellant's third assignment of error is overruled.

(Doc. 3, Exh. 15 at 8-9).

To the extent Ground Three of the petition alleges that the trial court erred by denying petitioner's motion for a new trial, the claim is not cognizable because petitioner challenges the trial court's ruling based on state law. Petitioner challenged the trial court's ruling under Ohio Criminal Rule 33. (Doc. 3, Exh. 12). In overruling this assignment of error, the Ohio Court of Appeals relied solely on state law. (Doc. 3, Exh. 15 at 8-9). Neither a violation of state law nor a state court's decision applying purely state law may be reviewed by a federal habeas corpus court. *Bey v. Bagley,* 500 F.3d 514, 518-19 (6th Cir. 2007); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983). In addition, challenges to a state's post-conviction procedures are not cognizable as independent claims in habeas corpus proceedings because such claims "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton,* 794 F.2d 245, 247, 248 (6th Cir. 1986). A claim that the trial court improperly denied a motion for a new

trial on the basis of newly discovered evidence presents no cognizable constitutional violation and may not be reviewed in a federal habeas corpus proceeding. *See Bilaal v. Moore,* 2007 WL 756690, \*24 (N.D. Ohio 2007); *Hence v. Smith,* 37 F. Supp.2d 970, 980 (E.D. Mich. 1999); *see also Sparman v. Edwards,* 26 F.Supp.2d 450, 468 n. 13 (E.D.N.Y. 1997) ( "[T]he weight of authority holds that in habeas corpus proceedings federal courts do not have jurisdiction to review state court denials of motions for a new trial.") (citing cases), *aff'd,* 154 F.3d 51 (2d Cir. 1997). Although a violation of state law may be cognizable in federal habeas corpus actions if such error amounts to a fundamental miscarriage of justice or a violation of the right to due process guaranteed by the United States Constitution, *see Floyd v. Alexander,* 148 F.3d 615, 619 (6th Cir. 1998); *Matlock v. Rose,* 731 F.2d 1236, 1242 (6th Cir. 1984), petitioner does not allege nor does the Court perceive any error of state law in this case that rises to that level.

Therefore, Ground Three of the petition should be denied.

## IV. GROUND FOUR IS NOT COGNIZABLE IN HABEAS CORPUS.

In Ground Four of the petition, petitioner asserts his convictions were against the manifest weight of the evidence. A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997), *superseded by state constitutional amendment on other grounds in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

20

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Therefore, petitioner's fourth claim should be dismissed as non-cognizable.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be DENIED with prejudice.

21

2. A certificate of appealability should not issue with respect to Ground Two, part two and Ground Three of the petition which this Court has concluded are waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[7]  A certificate of appealability should not issue with respect to the remaining grounds of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 8/26/08

Timothy S. Hogan
United States Magistrate Judge

---

[7] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BUDDY BULLOCK,                                        Civil Action No. 1:07-cv-392
    Petitioner,

                                              Dlott, J.
vs.                                                   Hogan, M.J.

WANZA JACKSON, WARDEN,
    Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S.

Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to

Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules

Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any

party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after

being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all

other parties written objections to the Report and Recommendation, specifically identifying the

portion(s) of the proposed findings, recommendations, or report objected to, together with a

memorandum of law setting forth the basis for such objection(s).  Any response by an opposing

party to the written objections shall be filed within ten (10) days after the opposing party has been

served with the objections. *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in

accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See*

*Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

23

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Buddy Bullock 475-206
Warren Corr. Inst.
PO Box 120
Lebanon OH 45036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by ( Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes.
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)

7007 0710 0000 8130 4945

PS Form 3811, August 2001 | Domestic Return Receipt | 102595-02-M-1540

1:07cv392 Doc.# 14